JUDGE HARDIN
delivered the opinion oe the court:
On or about the 2d day of December, 1864, the appellant, Thomas Phelps, for himself and the appellant, Josiah Phelps, executed and delivered to the appellee their promissory note for $810, payable on the 25th day of the same month.
The note appears to have been executed at the residence of said Thomas Phelps, in Madison county, in consideration of six mules, then on the farm of Bird Deatherage, a neighbor of Phelps, and which the latter agreed to buy of the appellee at the price of $135 per head, amounting to the sum of $810.
The appellants brought this suit on the 16th day of February, 1865, seeking a rescission of the contract, on the grounds, as they alleged, that they purchased the mules solely upon the appellee’s representations as to their quality and condition, at the agreed price, which was their full value if they had been sound and clear of any impediment; and that the appellee, to induce said Thomas Phelps to make the purchase, falsely and fraudulently represented to him that the mules were sound and clear of any impediment, except that two of them were a little lame, but were nearly well of the lameness; and that said Thomas Phelps, confiding in these representations, entered into the contract. That *377 at the time three of the mules were badly lamed and .unsound, and of such unsoundness that two of them died within a few days thereafter. That another one of the mules ran off and had never been found.; and that the appellant, Thomas Phelps, on going to see the mules within a day or two after the purchase, and discovering their unsoundness, refused to take possession of them, and never did receive them; and that he notified the appellee immediately that he would not receive the mules under the contract, and demanded a surrender of said note. They further alleged that the appellee knew, at the time of making said representations, that the mules were greatly more unsound than represented to be by him.
By an amended petition subsequently filed, the plaintiffs alleged that three of the mules, instead of two (as at first alleged), had died, and that they were diseased of the disease called “ glanders” at the time of the contract ; and that this fact was known by the appellee at the time, and artfully and fraudulently concealed by him from them.
The appellee, by appropriate pleading, traversed the material averments of both the original and amended petitions, and, by way of cross-petition against the 'appellants, exhibited the note of $810, and prayed judg- . ment thereon.
On hearing the cause, the court rendered a judgment dismissing the appellant’s action, and on the cross-petition adjudged that the appellee recover the amount of the note of eight hundred and ten dollars; and the appellants have brought the judgment before this court for revision.
The first inquiry is as to the representations or assurances made by the appellee of the condition of the *378 mules when the trade was made. It is admitted that he disclosed the fact that two of the mules were lame. But it appears, from the testimony of the only two witnesses who were present, that he represented the six mules all sound except those two, and that they “ were lame and skinned up, but were almost sound,” according to one of the witnesses; and that “ they had their legs swelled up and were near about well,” according to the other. It must be inferred from this testimony that the appellee impressed upon Phelps the belief that the disease of the mules was not such as to materially impair their value; and this conclusion is fortified by the fact that the price stipulated to be paid was nearly or quite as much as the mules were worth if entirely free from disease.
Although there is some contrariety of evidence as to the nature and extent of the disease with which the mules were affected at the time of the contract, the facts and circumstances proved conduce, in our opinion, by a decided preponderance, to the conclusion that the appellee’s representation of the condition of the mules was untrue, both as to the nature and extent of the disease and the number of the mules affected by it; for whether it was or not “ glanders” — and the proof tends to show that it was — it was of such malignant character as to result in the death of three of the mules.
But it is insisted for the appellee, that as the appellants did not seek to recover for a breach of warranty, but to rescind the contract and cancel their note, it is not sufficient that the representations made by the appellee should have been untrue; but to entitle the appellants to any relief, it should further appear that the appellee knew them to be untrue at the time they were made.
*379 But while this general principle need not be controverted, it does not extend so far as to protect a party from the consequence of his false representations in regard to visible defects in property, when, assuming to know the nature and extent of such defects, he deceives or misleads another by a false explanation, however ignorant he may be of the real condition of the prop-' erty. (Robertson vs. Clarkson, 9 B. Monroe, 507.)
If the appellee knew the character of the disease of which, as is proved by several witnesses, three of the mules shortly afterwards died, he was guilty of actual fraud in representing it as simply a lameness from which they would soon recover, and he was scarcely less guilty in so representing their condition if he was ignorant of it himself.
But the evidence tends strongly to show that he had reason to know that the condition of the mules was much worse than his representations implied.
There is another question, the solution of which may relieve this case of some apparent difficulty. Was there a completion of the contract by a delivery and acceptance of the mules, actual or constructive, so as to vest the property in them in the appellants ?
Conceding the transaction to have been such as, under ordinary circumstances, would operate to transfer the title, and place the property at the risk of the buyers, we are of the opinion that, notwithstanding the execution of the note, and the assent of the appellee that Phelps might take possession or control of the mules where they were, upon the farm of Deatherage, without a formal delivery, there was still an implied undertaking on the part of the appellee that the mules were all there ready to be received,.in such condition as the appellee had represented in making the sale; and if, without fault or negligence *380 in the buyers, it turned out that one of the mules was already dead or could not be found at the place of acceptance, or that Phelps had been deceived as to the soundness of the mules, or part of them, by the appellee’s misrepresentations or false explanations of their condition, he had a i-ight to decline to receive the mules and rescind the contract in toto, whether the appellee was guilty of intentional fraud or not. (1 Parson on Contracts, 451.)
It appears that Thomas Phelps went to the farm of Deatherage to see the mules within two days after the contract. One of the mules was then gone — whether it was dead or lost when the contract was made does not appear; but it cannot,.we think, be inferred that its loss was in consequence of any laches on the part of the ap- ♦ pellants ; and, as before suggested, three of the remaining five mules were in a much worse condition than Phelps had been led to expect by the representations of the appellee.
It does not appear that the appellants, at any time, took possession or control of any of the mules under their purchase. It is true, that, some time afterwards, Thomas Phelps, at the instance of Deatherage, permitted the two mules which remained of the lot to be taken with mules of his to Lexington and sold, the money being deposited in bank to the credit of Deatherage, who appears to control it for the use of the party who may be found entitled to it. This transaction, although relied on as showing an acceptance of the mules by Phelps, does not, in our opinion, as explained by the proof, conduce to that conclusion.
Although it does not appear that the appellants formally demanded a rescission of the contract before the institution of their suit, the evidence admits of little *381 doubt that the appellee was notified within a reasonable time of their election to abandon the contract; besides, it may be inferred from his answer that he would not have consented to a rescission if it had been at any time demanded.
Upon the whole case, we are of the opinion that the appellants were entitled to a judgment rescinding the contract and canceling their note.
Wherefore, the judgment is reversed, and the cause remanded, with directions to enter a judgment in conformity to this opinion.